# UNITED STATES DISTRICT COURT

_____NORTHERN_____ DISTRICT OF ___ILLINOIS, EASTERN DIVISION___

UNITED STATES OF AMERICA

v.

JAMES (A/K/A BUDDY) WILKINS, JR.

(Name and Address of Defendant)

**FILED** 12-13-07 DEC 13 2007 MICHAEL W. DOBBINS CLERK, U.S. DISTRICT COURT

MAGISTRATE JUDGE COX

**CRIMINAL COMPLAINT**

CASE NUMBER: **07CR 831**

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about ___November 15, 2007___ in _____Cook_____ county, in the ___Northern___ District of _____Illinois_____ defendant(s) did, (Track Statutory Language of Offense)

making false declarations (before a Grand Jury) and obstruction of justice

in violation of Title ___18___ United States Code, Section(s) ___1623(a) and 1512(b)(2)___.

I further state that I am a ___Special Agent of the FBI___ and that this complaint is based on the following
<br>Official Title

facts:

See attached Affidavit

Continued on the attached sheet and made a part hereof: _X_ Yes ___ No

Signature of Complainant

Sworn to before me and subscribed in my presence,

12.13.07                 1:04 pm           at   Chicago, Illinois
Date                                            City and State

Magistrate Judge Susan E. Cox
Name & Title of Judicial Officer                Signature of Judicial Officer

STATE OF ILLINOIS        )                                    **UNDER SEAL**
                         )   SS
COUNTY OF COOK           )
                             **AFFIDAVIT**

**I. INTRODUCTION**

I, Jay G. Hagstrom, after being duly sworn, depose and state as follows:

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed for 10 years. I am currently assigned to the Chicago Division, specifically a public corruption squad located in Lisle, Illinois. My duties include investigating numerous violations of federal law, including, but not limited to mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343. In my capacity as a Special Agent, I have investigated political corruption, mail fraud, wire fraud, bank fraud, credit card fraud, money laundering and other financial and political corruption crimes. I have also received specialized training in white collar investigations.

2. This affidavit is based upon my personal knowledge obtained from my personal observation, interviews of cooperating witnesses, cooperating defendants, and other witnesses, review of documents, reports, transcripts, and tax returns, and information received from other law enforcement agents. Because of the limited purpose of this affidavit, I have not set forth all of the information of which I have become aware in the course of this investigation.

3. This Affidavit is made in support of a criminal complaint for an arrest warrant for JAMES (A/K/A BUDDY) WILKINS, JR. for making false declarations (before a Grand Jury) in violation of 18 U.S.C. § 1623(a) and obstruction of justice in violation of 18 U.S.C. § 1512(b)(2).

4. As part of the investigation into mail fraud in violation of 18 U.S.C. § 1341, and wire

fraud in violation of 18 U.S.C. § 1343 involving loans to CHAIB INVESTMENTS, L.L.C., and other entities, I also have investigated possible obstruction of justice, witness tampering and false declarations to a grand jury. The violations related to JAMES (A/K/A BUDDY) WILKINS, JR.'s false declarations in grand jury testimony and failure to make a complete production of records in his possession in response to a federal grand jury subpoena.

5. In addition, as explained in greater detail below, this application seeks authorization from this Court to seal this arrest warrant and complaint for a period of 30 days.

## II. BACKGROUND OF THE CURRENT INVESTIGATION

6. GENERAL ELECTRIC CAPITAL CORPORATION (f/k/a General Electric Capital Business Asset Funding Corporation and General Electric Franchise Finance Corporation) ("GECC") is a Delaware corporation with its principal place of business in Bellevue, Washington. Among other things, GECC loans money to franchisee-borrowers for the purpose of acquiring, operating, and building fast food franchise restaurants.

7. REZKO ENTERPRISES LLC ("REZKO ENTERPRISES") was a Delaware limited liability company with offices in Downers Grove and Chicago, Illinois. REZKO ENTERPRISES owns and operates fast-food restaurants, directly and indirectly through subsidiary companies including PJ CHICAGO LLC, pursuant to franchise agreements, including Papa John's Pizza stores in and around Chicago, Illinois; Milwaukee, Wisconsin; and elsewhere. REZKO ENTERPRISES was owned by shareholders, including individuals who had paid money to obtain shares in REZKO ENTERPRISES ("Individual Investors"). As president of REZKO ENTERPRISES, ANTOIN REZKO owes a fiduciary duty and a duty of honest services to the Individual Investors.

8. PJ CHICAGO LLC ("PJ CHICAGO") is a wholly owned subsidiary of REZKO

ENTERPRISES LLC, and owned and operated Papa John's Pizza stores in and around Chicago, Illinois, and Milwaukee, Wisconsin, and elsewhere.

9. CHICAGO PJ LLC ("CHICAGO PJ") was owned and operated by ANTOIN REZKO. Beginning in and around 2001, ANTOIN REZKO doing business as CHICAGO PJ LLC, owned and operated Papa John's Pizza stores in and around Chicago, Illinois. REZKO ENTERPRISES and the Individual Investors have no ownership interests in CHICAGO PJ LLC.

10. JAMES (A/K/A BUDDY) WILKINS, JR. ("WILKINS") was employed by REZKO, and in the past acted as an operations manager for ANTOIN REZKO in connection with the pizza businesses that ANTOIN REZKO ran in the Chicago area. According to news reports in 2004, his title was vice president of operations for PJ LLC and CHAIB INVESTMENTS LLC, an entity owned by Abdulhamid Chaib ("CHAIB"), another REZKO employee.

11. ANTOIN REZKO (a/k/a TONY REZKO) ("REZKO"), a resident of Wilmette, Illinois, was the president of REZKO ENTERPRISES LLC. REZKO is currently named in two pending federal indictments in this district: *United States v. Stuart Levine and Antoin Rezko*, 05 CR 691 (St. Eve, J.), and *United States v. Antoin Rezko,* 06 CR 729 (Zagel, J.).

12. The second of these two indictments (06 CR 729) charges REZKO with multiple counts of wire fraud in violation of 18 U.S.C. §§ 1343, 1346 and 2. It alleges (in summary) that between 2001 and at least March 2004, REZKO and co-schemers engaged in a scheme to defraud GECC of money and property and to deprive the Individual Investors of their right to REZKO's honest services in connection with sale transactions, namely the sales of certain pizza restaurants located in the vicinity of Milwaukee, Wisconsin (the first sale), and Chicago, Illinois (the second sale). Among other things, the indictment alleges that REZKO caused materially false and

fraudulent statements regarding the financial performance of these restaurants to be made to GECC in connection with applications for two loans: one for approximately $5 million for the purchase of the Milwaukee area restaurants and another for approximately $6 million for the purchase of Chicago area restaurants. The second of these loans was a loan that REZKO allegedly obtained to finance the acquisition of the Chicago area pizza restaurants by his company Chicago PJ LLC – a transaction that he allegedly concealed from the Individual Investors.

**December 5, 2006 Search**

13. On or about December 5, 2006, an anticipatory search warrant was obtained to search WILKINS' vehicle, a light colored, silvery late model Toyota minivan ("subject vehicle"). Pursuant to the anticipatory search warrant, which has remained under seal pursuant to court order, the subject vehicle was searched on or about December 5, 2006. A large black binder was found on the floor of the minivan behind the passenger's seat. The binder contained weekly sales reports for Papa John's pizza restaurants controlled by REZKO, including restaurants owned by CHAIB INVESTMENTS, L.L.C. and CHICAGO PJ, L.L.C.

14. A briefcase containing a laptop computer and financial reports was located on the seat behind the driver's seat. The financial reports in the briefcase included: Chicago PJ, L.L.C., P13 2003 Financial Statements - Preliminary, December 28, 2003; Chaib Investments, L.L.C., P13 2003 Financial Statements - Preliminary, December 28, 2003; AMO Consolidated, P13 2003 Financial Statements - Preliminary, December 28, 2003; and Consolidated, P13 2003 Financial Statements - Preliminary, December 28, 2003. All of these financial statements contain a prior year column that relates to 2002. The Chicago PJ and Chaib Investments financial statements contain consolidated statements as well as individual statements for each store making up the respective entities. The

AMO consolidated statements contain statements for each area manager, consolidating the data for all stores under the control of that area manager. The Consolidated statement breaks out the financial data into three columns, Illinois Stores, Michigan Stores and Totals. The Consolidated statement combines the stores included under Chicago PJ and Chaib Investments.

15. Copies were made of the weekly sales reports and the financial statements from the briefcase. The original documents were returned to the subject vehicle, and pursuant to court order no notice of the search was given.

### III. THE GRAND JURY'S ATTEMPTS TO OBTAIN EVIDENCE FROM WILKINS

16. As part of the investigation the allegations of fraud in connection with applications for GECC loans to CHAIB Investment LLC and other as-yet uncharged mailings, wirings, and other federal crimes, law enforcement sought to obtain documents and testimony from former Rezko and Chaib employee WILKINS.

17. As described below, there is probable cause to believe that WILKINS has information relevant to the grand jury's investigation and that, despite being granted immunity from prosecution, he has both testified falsely before the grand jury and obstructed justice by failing to produce to law enforcement documents in his possession relevant to the investigation and by lying about what documents he possessed.

18. During the course of the investigation, law enforcement attempted to secure WILKINS's truthful cooperation in this investigation. Law enforcement agents contacted WILKINS, who was then living in North Carolina, to discuss issues relating to Rezko. WILKINS initially indicated that he would be willing to speak with law enforcement at a later date but declined to speak with them when contacted. Subsequently, a Chicago attorney named Eugene Murphy contacted a

member of the United States Attorney's office to state that he was now representing WILKINS. Murphy had previously represented and at that time represented Antoin Rezko and various of his entities in on-going civil litigation, including civil litigation arising from the GECC loan transactions. Murphy indicated that WILKINS was not willing to be interviewed by law enforcement. In October 2006, when WILKINS initially appeared before the grand jury pursuant to subpeona, WILKINS invoked his right not to testify pursuant to the Fifth Amendment.

19.   Law enforcement subsequently learned that WILKINS had been offered and accepted employment with Rezko in Chicago. Indeed, WILKINS has testified that after he was contacted by law enforcement - at a time he was in dire financial condition - Rezko contacted him with an offer of lucrative employment and free housing (namely living in an apartment of another Rezko attorney for which Rezko promised to pay the rent).

20.   On December 5, 2006, after the search of the van was complete, a representative of the United States Attorney's Office served a grand jury subpoena for testimony on Eugene Murphy, WILKINS' attorney, for the testimony of WILKINS. WILKINS has testified that he became aware of the existence of that grand jury subpoena later that same day.

21.   WILKINS appeared before the grand jury pursuant to that subpoena on December 7, 2006, and testified pursuant to an order of immunity. On that day, WILKINS testified that he possessed documents, specifically a black binder (namely the binder that had been earlier located in the van unbeknownst to him), but did not mention the loose hard copy financial statements that were previously located in the briefcase in the van (again, unbeknownst to him). WILKINS testified that this binder contained all of the documents that he had in his possession, with the exception of certain materials stored electronically on his computer that related to e-mails that were sent back and forth

between Heidi von Dachenhausen and himself. With respect to the binder, he testified that he gave the binder to his attorney, Murphy.[1]

22. Also during the December 7, 2006 grand jury appearance, WILKINS testified in summary that he was experiencing severe financial hardship and that he was seeking to collect monies owed him from Antoin Rezko. He further testified that prior to his grand jury appearance he met with Rezko. He also stated that he had been promised payment toward this alleged debt and expected to receive it the morning of this grand jury appearance or following his grand jury appearance. WILKINS testified that he had been promised that this payment would be made as a wire transfer to a bank account held by his mother. Upon close questioning, WILKINS denied that there was any connection between his testimony and the timing of the payment from Rezko.

23. After his testimony of December 7, 2006, WILKINS was served with another grand jury subpoena for testimony and documents. This subpoena sought his appearance before the grand jury on or about December 14, 2006. That appearance was extended when Rezko moved to quash the subpoena served on WILKINS. After the district court denied that motion, WILKINS appeared before the grand jury a third time on February 15, 2007.

25. On February 15, 2007, WILKINS was sworn in by the Foreperson of the Grand Jury. WILKINS stated that he was aware that an order of immunity was obtained for him and that the order, in part, specified that:

"It is hereby ordered that James a/k/a Buddy WILKINS shall not be excused from testifying

---

[1] At this grand jury appearance, WILKINS, who was escorted to the grand jury room by his attorney, Eugene Murphy, was placed under oath and advised that if he lied or failed to remember something he, in face, did remember, he could be prosecuted for a number of different federal offenses including perjury and obstruction of justice. WILKINS acknowledged that he understood these instructions.

or producing books, papers or other evidence before the said Grand Jury on the grounds that the testimony or evidence required of him may tend to incriminate him."

"And it is further ordered that no testimony of and no documents produced by the witness, James a/k/a Buddy WILKINS, compelled under this order for any information, directly or indirectly, derived from such testimony, documents or other information, may be used against him in any criminal case except the prosecution for perjury, giving of false statement or otherwise failing to comply with this order in accordance with the provisions ..."

26. These provisions were read to WILKINS and he advised that he understood the provisions. WILKINS further stated that he understood that the order of immunity did not immunize him from any lies that he might tell the Grand Jury.

27. During the testimony on February 15, 2007, WILKINS acknowledged being served with the subpoena for testimony and documents referenced above on December 7, 2006.

28. With respect to consolidated financial statements, WILKINS testified that in December of 2006 he did not have hard copies of financial statements related to any pizza restaurants. WILKINS was asked: "You didn't have possession of a hard copy document that would be consolidated financial statements for any pizza business of any kind, Mr. Chaib, Mr. Rezko, any company that they operated, in your possession after approximately September of 2006?" WILKINS responded: "Correct".

24. WILKINS was represented by RICHARD FRIEDMAN in connection with that production and appearance pursuant to the December 7, 2006 subpoena. Prior to that appearance, WILKINS, through FRIEDMAN, produced records in response to the subpoena. Included in those records were the black binder containing the weekly sales reports, a manilla folder containing payroll

related records and a letter from WILKINS to TONY REZKO regarding money owed to WILKINS. None of the financial statements found in the briefcase during the search on December 5, 2006 were included in WILKINS' production of documents. In fact, in statements to law enforcement and in his grand jury appearances, WILKINS has consistently denied possessing any additional hard copy materials, including consolidated financial statements relating to the pizza restaurants.

24. Although WILKINS made clear during his February 15, 2007 grand jury appearance that he possessed no additional hard copy documents, WILKINS has stated and testified that he possessed certain additional materials in electronic format - i.e., e-mails and files stored on his computer

29. On March 8, 2007, FRIEDMAN faxed AUSA McNIVEN two additional documents in response to the subpoena served on WILKINS in December of 2006. The first document was titled CHAIB INVESTMENT, LLC, 2004 PROFIT AND LOSS STATEMENT, COMPLETED BY JAMES W. WILKINS JR. The second document appears to be an e-mail from Heidi von Dachenhausen to James WILKINS, regarding "Please pass this on to Mr. Rezko."

30. On October 26, 2007, AUSA McNiven compiled and had bates stamped from numbers 1 through 1162 all the documents previously produced by WILKINS and his attorney pursuant to the grand jury subpoenas, and mailed them to WILKINS for his review in North Carolina. WILKINS reviewed the documents personally and with his attorney prior to his last appearance before the grand jury on November 15, 2007. At that appearance, WILKINS identified these documents as all those he had in his possession on December 5, 2006 and had been required to produce pursuant to the grand jury's subpoenas, and denied that anyone else was holding any additional documents for him.

31. As of today's date, WILKINS has not produced copies of the consolidated financial

statements found during the search of his vehicle on December 5, 2006.

32. Wherefore, I respectfully request issuance of an arrest warrant for James WILKINS, Jr. based on probable cause that he made false declarations (before a Grand Jury) in violation of 18 U.S.C. § 1623(a), and obstructed justice in violation of 18 U.S.C. § 1512(b)(2).

33. It is also respectfully requested that this Court issue an Order pursuant to which this affidavit and documents related to the application for arrest warrant may be filed under seal. Premature disclosure of the contents of the affidavit may have a negative impact on the success of an ongoing investigation in gathering evidence of these crimes.

34. Based upon the above information, there is probable cause to believe that James WILKINS, Jr., violated federal laws, including violations of 18 U.S.C. § 1623(a) and 18 U.S.C. § 1512(b)(2).

FURTHER AFFIANT SAYETH NOT.

_____
JAY HAGSTROM
Special Agent, FBI

SUBSCRIBED AND SWORN TO BEFORE ME
THIS 13TH DAY OF DECEMBER, 2007

_____
SUSAN E. COX
UNITED STATES MAGISTRATE JUDGE